19-2435, Robyn Morgan v. Sundance. Mr. Rice, we'll hear from you first. Good afternoon, your honors. May it please the court. The district court's denial of Sundance's motion to compel arbitration was error and should be reversed for two independent reasons. First, Sundance manifestly did not substantially invoke the litigation machinery. And secondly, there was no prejudice to plaintiff as a result of the timing of this motion. Turning first to the lack of substantial invocation of litigation machinery, if you apply the proper test, which is the totality of the circumstances, Sundance did not substantially invoke the litigation machinery. And let's look at the life cycle of a typical litigation case. First, Sundance did not initiate this court action. Plaintiff did. That distinguishes this case from Messina and Llewellyn, where the movant had either initiated the court action or removed it or urged that it be filed. Secondly, Sundance did not file a motion directed at the merits of this lawsuit. That happened in Hooper, for example, and in Llewellyn. That didn't happen here. Next, let's look at discovery. Sundance did not participate in any discovery. It did not require plaintiff to respond to any discovery. And finally, there was not even a discovery or scheduling conference that took place in this case. Sundance's motion was filed before the parties had even done a Rule 26F report or had an initial scheduling conference with the court. And finally, this is not a case where a party tries out a legal theory on the court, then fails, figures out, oh gosh, I want to get another bite at the apple, and then finally gets wisdom and seeks to file for arbitration, as in Hooper, for example, or Messina. Here, the timing does not smack of any kind of manipulation of the judicial process. I thought you said you were influenced by the Lamps Plus decision. We were influenced by the Lamps Plus decision. That's correct, Your Honor. Why isn't that indicative of the kind of thing you were just describing? You were prepared to stay in court, and then when Lamps Plus came out, you realized you had a solid arbitration argument, so you decided to go that way. That's how I read your briefing. Well, certainly prior to Lamps Plus, we had not invoked arbitration because we had a legitimate concern, Your Honor, that if we had sought arbitration prior to Lamps Plus, we had a serious risk that we would be forced into class arbitration, which was something that would have been contrary to our interests. Right. Doesn't that just show that you were therefore content with court? You thought that was the better option because of the risk of class arbitration. Until you saw Lamps Plus, you decided to switch. I don't see that, Your Honor, as the same thing that happened in Hooper or in some of the other cases, the Gray-Holdco case, where a party litigates an issue in court, loses, and then says, oh, I'm going to go to arbitration so I can get a second bite at the apple. It's not the same as that. I understand. No, it's not the same as that. Why isn't it still indicia of waiver in the sense that you intended to go in the court route until you saw a favorable decision that suggested arbitration would be a better forum for you, and then you switched? Why isn't that indicative of an intentional relinquishment of your right to arbitration in the beginning? Because, Your Honor, it just so happens that the Lamps Plus decision came down at the very inception of this lawsuit, and therefore, A, we hadn't substantially invoked the litigation machinery, which is the test of this circuit, and B, we hadn't done anything to cause prejudice to the plaintiff. I would acknowledge this, Your Honor, if Lamps Plus had come down at a much later stage in this case, and if we had already engaged in class discovery, or if we had filed a motion directed at the merits of Morgan's wage and hour claims, then sure, we wouldn't have been able to use Lamps Plus to somehow or another seek arbitration. It just so happens, again, this goes back to context and the totality of the circumstances. If you look at the totality of the circumstances, the timing of this was simply not such that we had substantially invoked the litigation machinery when we did what we did. There's nothing wrong with us looking at Supreme Court precedent and deciding, can we invoke arbitration as long as we haven't waived it? Under that test, we simply hadn't waived it. And no case in this circuit has found waiver on such a thin set of procedural facts. Every single case has involved discovery, participation in scheduling, merits-based motions, or some combination of those. We don't have that here. The district court's finding, to the contrary, was riddled with error. What was the first error? The first error was it explicitly rejected the notion that the test was totality of the circumstances. That's simply wrong. This circuit has said on more than one occasion that you have to look holistically at all the facts and the totality of the circumstances, nor does it make any logical sense. How do you determine if the litigation machinery has been substantially invoked unless you look at context and all the circumstances? Otherwise, the test is any invocation of the litigation machinery. That's not the test. It's not any. If it was, then admittedly, we had some invocation, but it was clearly not substantial on the totality of the circumstances. That is the test not only in this circuit, but every other circuit that we've looked at looks at all the facts. The second error is the court placed a lot of emphasis on the fact that the parties have mediated this case. Mediation is the opposite of invoking litigation. It is done to avoid litigation. Mediation is explicitly promoted by the Federal Arbitration Act. What the parties did in having a private settlement conference is one of the goals of the Federal Arbitration Act, inexpensive and speedy and efficient resolution of matters. The fact that the court looked askance at the fact that both sides had decided to take a run at settlement is simply wrong and error for the court to have considered that. Its consideration of private settlement is something that is potentially going to have a chilling effect on parties in the future who choose to have early settlement talks where there is an arbitration agreement in place. The federal rules clearly encourage settlement. Look at Rule 68. Is that the thing about invoking arbitration that would preclude mediation? No, I would not say that that would preclude us from mediating, so no. I would agree that you could mediate if you invoke arbitration. The third error that I want to point out to the court is that the district court did not pay sufficient heed to the strong presumption in favor of arbitration that's dictated by the Federal Arbitration Act that the Supreme Court in a series of decisions over the last 10 to 15 years has announced. Those are cited in our opening brief. This circuit has cited to those decisions in saying that waiver is not to be lightly inferred. In effect, if you want to use a baseball analogy, the tie goes to the runner here. It goes to us, the party moving to compel arbitration. If this case is considered close, it should be decided in our favor, not against us, because waiver is not to be lightly inferred. The district court here, in our view, we submit that it seemed to go out of its way to find waiver by looking at some fairly inconsequential activities, by focusing on the mediation, which it shouldn't have considered, by applying the wrong test, by stating that any single act was enough to substantially invoke, as opposed to looking at the totality of the circumstances. Those three errors alone warrant reversal, but independent of the substantial invocation component, your honors, the district court also erred in finding that the plaintiff was prejudiced. Waiver requires both. It's a conjunctive test. Even if Sundance had acted inconsistent with its right to file for arbitration, the court still has to find that the plaintiff was somehow prejudiced. Why should that be the rule as a matter of first principles? If it's clear the party is intending to waive, why should there be a prejudice requirement on top of it? Because of the strong goal of promoting arbitration, your honor, under the Federal Arbitration Act, and if a party is delayed for whatever reason in asserting its right to arbitration, it has a right to arbitration. Here, the parties contracted for arbitration. And we raised that, Sundance raised that, early in the case. Prejudice is clearly... If you're talking about waiver of any other contractual right, there wouldn't be a prejudice requirement, I don't think. I'm wondering why this should be treated different than waiver of any other contractual right. What I would say, your honor, is this isn't just any other contractual right. This is a right that's promoted by the Federal Arbitration Act. There's a strong federal policy underlying the notion that arbitration is to be promoted and encouraged. It's not like a normal contract case. There's a federal policy underlying it. That's how I would say it should be distinguished. In the Llewellyn case, this circuit announced the test for prejudice. That test is as follows. A party is prejudiced when the parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts. It was quoting another court, but that's a quote from Llewellyn. That quote was repeated in the Messina case. We do not, none of those are present here. The parties did not use any discovery that would not be available in arbitration because there was no discovery in this case. They did not litigate a substantial issue on the merits. There was no motion directed at the merits of Ms. Morgan's case, or the merits of any of the purported class claims, and there would be no duplication of effort here. We didn't ask, require plaintiff Morgan to do anything that she would then have to do again in arbitration, because she hadn't responded to a merits motion. She hadn't responded to discovery. All of that lay in front of her in the arbitration action, so no duplication of effort would be required. If she went to arbitration, the slate would be clean, and everything we did in that arbitration would be done for the first time. This does not meet the test of prejudice that this circuit announced, quoted in Llewellyn and in Messina. Delay alone is not sufficient to amount to prejudice. The district court did pay lip service to that, but we submit that it clearly held the eight months against us. We think that is fallacious and misleading, because over half of those eight months were simply the parties waiting for the district court to rule on that stay motion, to have this court, this case, wait behind the Wood case. That should not be held against us, because literally nothing happened. Then the other place where the district court erred with regard to its prejudice determination, similar to the error with regard to the substantial invocation prong, is that it considered the party's activity in settling. That should not have been considered. It was wholly voluntary. All of the activity in the mediation was done by Sundance, producing the records and the emails. Morgan incurred no substantial costs. They sat for a mediation for one day, and the parties weren't able to reach agreement. That's simply not enough for prejudice. Your honors, I see I'm coming up against my time. I'd like to reserve a little time for rebuttal if I can. You may. You can and you may. Thank you for your argument. Mr. Ashe, we'll hear from you. Thank you, your honor. Good afternoon. May it please the court. My name is Charles Ashe, and I represent the plaintiff in this matter. We request that you affirm the district court's ruling that the defendant waived its right to compel this case to arbitration. I want to begin by taking the defendant's invitation to put this case into context, because it doesn't help the defendant's case to look at the context of how we got to this point. After having its motion to dismiss denied to transfer this case to Michigan, where the case where they were arguing to the district court that this plaintiff's claims were already being litigated in Michigan since 2016, the defendant has mistakenly asserted that the district court failed to consider the totality of the circumstances in correctly deciding that the defendant waived its right to compel the arbitration. The district court plainly stated, and I quote, separately or together, the delay and these the district court did look at the totality of the circumstances. In the big picture, to see exactly what defendant was doing here, the defendant argued to the court early on in this case that this plaintiff's claims were currently covered in the Michigan litigation. That litigation had been pending since 2016, but the problem is that a year after that litigation commenced, defendant cut all of the non-Michigan plaintiffs out of the case. They filed a stipulation limiting the class members to only Michigan plaintiffs, and that looking for the citation right now, I'll locate that in a minute. But the problem is that puts the plaintiffs in a very difficult situation because the plaintiff cannot stop their statute of limitations from running until they opt into the case. So plaintiff took matters into her own hand and she filed this lawsuit. The defendant argued that plaintiff's claims should be litigated in Michigan in the Wood action, which had been pending, like I said, since October 2016. So in other words, the plaintiff did not receive notice of the Michigan lawsuit, nor was she eligible to opt into the case where, according to defendant, her claim is actively being litigated. Now, the defendant, after appearing in this lawsuit, requests an extension to file an answer. They do not mention an arbitration agreement in this case. They did not mention an arbitration agreement in the case pending in Michigan, which had been pending for two years. Mr. Ashe, will you concede that the motion to dismiss that was filed was not a merits-based motion? I'm not willing to concede that, actually, Judge. And the reason for that is because the motion to dismiss was asking this court to move plaintiff Morgan back to Michigan. And moving to Michigan, she wasn't eligible to join that case. And here is the most interesting part about this whole initial activity of the defendant. They actually said, and I quote in their brief, defendant is not seeking to dismiss plaintiff's individual substantive implicit claims with prejudice. In fact, plaintiff has several options with regard to them. For example, plaintiff may refile her claim on an individual basis before this court, or attempt to opt in or otherwise join the Wood action. That, to me, is an express waiver. They made the argument to the court that the plaintiff should be filing her case on an exclusive collective basis, go to the Wood action. Now, the district court correctly recognized that sending the plaintiff back over to Michigan would be a problem, because her statute of limitations and all the other non-Michigan employees is running out. So, if they transfer this case back to Michigan, and plaintiff's attorney in the Michigan case do nothing, then all the statute of limitations run out. I don't know how the defendant can possibly argue that this is not acting inconsistent with the right to arbitrate. To that end, saying that the plaintiff should file a lawsuit is getting rid of any doubts of whether or not there was a waiver here. I mean, that's an express waiver. But turning to more technical arguments, some of which the court pointed to, the Lance Plus argument, I want to address that. In light of the situation, the very first question in all of this, what happens in this eight-month delay of just the Morgan case before defendant raises the issue of arbitration, the very first question has to be, why did the defendant wait so long? At its core, as the court correctly found, the defendant's response was purely a tactical reason. It was a tactical reason that they waited, and they didn't initially assert the right to arbitration. They also argued incorrectly that the Lance Plus decision provided significant clarification as to the availability of class arbitration when the arbitration agreement is silent or ambiguous on the issue of class arbitration. And, again, I'm quoting, under the prior state law, defendant risk being compelled to arbitration as a matter of a collective action. Well, this is a silent arbitration agreement in this case. That issue had been decided 10 years prior to Lance Plus. Lance Plus held that, and I quote, an implicit agreement to authorize a class action arbitration is not a term that an arbitrator may infer solely from the fact that the parties have an agreement to arbitrate. Indeed, in Lance Plus, the Supreme Court specifically stated, in Stolt-Nelson, we held that courts may not infer a consent to participate in class arbitration. The whole Lance Plus arbitration argument should not be considered by the court. But as I'm running out of time here, I want to move into the arguments under the Llewellyn waiver text. Although, again, I think that the defendant has expressly waived their right to compel this case to arbitration. Counselors, could you specifically address how your client was prejudiced? Yes. I would be happy to, Your Honor. The district court properly noted that the delay alone does not constitute prejudice. However, the delay, along with other factors, does support a finding of prejudice. Specifically, the court properly determined that because the defendant failed to do all it reasonably could have been expected to do at the earliest feasible determination of whether to proceed judicially or by arbitration, as is required by the precedent of this court, plaintiff was unnecessarily required to respond to a motion to dismiss. That was a very hefty motion to dismiss, as I said. As the attorney responsible for the briefing, I can tell you that briefing a first file rule on a motion to dismiss where the plaintiff was initially included in the first file case, but was subsequently excluded mid-litigation, was no easy task. Additionally, another massive undertaking was the preparation for class-wide litigation. Defendant has made a big deal about the reference of mediation in this case, or in the district court's holding, but they're misconstruing what the district court was saying. The district court was saying, regardless of whether all the discovery happened for mediation purposes, the plaintiff was, and we were, preparing our class claims. I didn't hire an expert solely for the mediation. I knew at some point I was going to have to prove class-wide damages. I had no reason to believe that we were not going to litigate this case on a class-wide basis. Secondly, I reviewed thousands and thousands of pages of documents on a class-wide basis, where had I known that we were going to arbitrate the claim, I would have focused on individual issues to support my client's claim, as opposed to class-wide claims that would support my class certification motion, or proving damages on a class-wide basis. As all the case law recognizes, individual cases are very different than class-wide basis, and the proofs are very different. There was an eight-month delay where the defendant has continually referred to this as a dearth of litigation. That was not the case for me. I was preparing my class-wide arguments for this case in trial. The defendant says there's no duplication, or there's no potential for duplication. Well, that's not exactly true either, is it? Because the arbitration agreement is silent as to where we're going to litigate. I just went through a whole motion with him about him trying to move my case to Michigan. The arbitration agreement doesn't provide where the arbitration is going to occur, so I could be having that argument again. The point is I don't have to prove everything from every single case that the court in Messina found for a waiver. What Messina said is that they found waiver on somewhat similar pretrial findings to Llewellyn. Just so that we're clear on what the court is going to have to do, the hair that the court is going to have to split in order to distinguish this case from the Morgan case, the similarities include filed a motion to transfer. The defendant did that in this case, although it was technically a motion to dismiss, or in the alternative, stay. Waited eight months for arbitration. Both cases, Messina and this case, that happened. Failed to raise arbitration in the affirmative defenses. That happened in Messina. It happened here. Failed to mention the arbitration in the motion to transfer. Consistently argued it was prepared for trial in federal court. Well, here, as I pointed out earlier, the defendant lodged an argument to dismiss this case so that plaintiff could file in two other courts. Never once mentioned arbitration. Only moved for arbitration after losing the motion to transfer. True in this case as well. As to prejudice, responding to a dense motion, yes, there was unnecessary motion practice. The defendant knew all along that they could have raised this arbitration agreement. They could have raised it in their answer, and I wouldn't have had to respond to this motion. But instead, they tried to get me kicked back into Michigan. Delayed for eight months. That also factors into prejudice as well. The potential duplication I just addressed, and deprived of developing the litigation strategy, which I also addressed. Those are all things that amount to prejudice. And quickly, the two cases the defendant relies on in their brief to support a finding of waiver or no waiver is Dumont and ABF Freight Systems. I have to point out that those cases are incredibly different. First, Dumont was a case that involved an auto accident case that involved an uninsured motorist claim where the arbitration was raised by the uninsured motorist carrier before the lawsuit even commenced. They refused to participate in the case against the at-fault driver because they said there was an arbitration agreement. Nonetheless, the plaintiff then filed a lawsuit, and the defendant in Dumont immediately moved to dismiss it for arbitration, the uninsured motorist carrier. Not at all the situation here. ABF Freight Systems, the entire lawsuit was filed to determine whether or not arbitration was appropriate in the case. That was the whole basis of the lawsuit. It was right from the onset. There's no way that those cases support the defendant's case. We talked about the new of an existing right. Of course, the first element, dispute and Llewellyn waiver test, the three elements that the court needs to consider are, did the party know of an existing right to arbitrate? Two, did they act inconsistently with that right? Number three, was the plaintiff prejudiced? I just addressed prejudice. Number one is not even at issue. Number two, let's talk about number two real quick. As I stated above, the defendant expressly waived the right to arbitrate when it argued to the court that the plaintiff can refile her individual lawsuit in the Iowa District Court or in the alternative joint Michigan litigation. Regarding the discussion of substantially invoking the litigation machinery, the District Court properly pointed out in Llewellyn, Messina, Hooper, and Ritzel, all used the conjunction or in giving examples of acts that substantially invoked the litigation machinery. This gets back to my point that I just made. I don't have to prove everything. I just have to prove some of these things. The District Court went through all of these different arguments and evaluated the totality of the circumstances. Defendants have somehow twisted this point, but I want to reiterate. The District Court said separately or together, the delay in these actions by Sundance were inconsistent with asserting the right to arbitrate. In other words, it doesn't matter which way you look at it. They waived the right to arbitrate. The court then rolled through a laundry list of actions that were inconsistent with the right to arbitrate. For example, seeking an extension of dates, filing a motion to dismiss on plaintiff's claims on the grounds that her claims should or were being litigated in Michigan, encouraging her to file a lawsuit in the Iowa District Court, filing an answer without identifying an arbitration agreement as a potential defense, and asking me to prepare a Rule 26 report. One day I get a call from him that says, prepare a Rule 26 report. The next phone call I get from him is, we want to compel this case to arbitration. All of these things occurred over an eight-month period of time, and I was not, like defendant says, sitting on my hands waiting. I was preparing my case for trial on a class basis. And I see that I'm out of time, so I appreciate the opportunity to make this argument. This is a privilege for me, honestly, and I'm happy to answer any questions that the court may have. Very well. Thank you for your argument, Mr. Ashe. Mr. Rice, we'll hear from you in rebuttal. You'll have to turn your microphone on before you start your argument. Sorry about that. Okay. I'll try to go at warp speed here, but I want to focus on a couple of things. First of all, the notion that we filed a motion to transfer the case to Michigan is just false. That's not what that motion said. It was a motion to either stay this case or to dismiss it without prejudice, clearly not on the merits. And we said that she was free to bring an individual claim if she wanted. She could have brought that individual claim in arbitration. We did not seek to transfer it to Michigan, and that's just a false assertion. Secondly, counsel is talking about a number of things that he supposedly did to prepare his case. None of that is in the briefing. None of it is in his appeal brief. None of it is in his briefing below. It's not in the record before this court, and we shouldn't be required to respond to what he claims are examples of the things he did that were not in the briefs. So that should not be considered by this court. As far as the LAMPS Plus case, yes, Stolt-Nielsen did say silence is not enough, but our agreement was almost identical to the agreement in LAMPS Plus that was found to be ambiguous because of the incorporation of the AAA rules. So we had real risk there if we were relying just on Stolt-Nielsen. Your Honor, I think because I'm out of my rebuttal time, I think that's all I will say. I wanted to focus on those particular things. Very well. Thank you for your rebuttal. Thank you to both counsel for your presentations and for appearing by videoconference. The case is submitted, and the court will file an opinion in due course.